WILLIAM H. HUNTRESS v. STRATHAM.

The third section of the act of July 9, 1862, empowering towns to raise and appropriate money to encourage voluntary enlistments, does not authorize a town to pay money to one already enlisted into the service of the United States, merely to procure his transfer from the quota of one town to the quota of another town in this State.

ASSUMPSIT to recover the sum of five hundred dollars and interest. Plea, the general issue.

August 6, 1862, the plaintiff enlisted into the 10th New Hampshire Regiment for three years or during the war, under the call of the President for 300,000 three years' men.   August 20, 1862, he was mustered into the service of the United States, and duly and legally counted on the quota of said town under that call.   August 8, 1862, a warrant for a town meeting, to be held on the 25th of August, 1862, was duly and legally issued and posted.   In that warrant was the following article :

ARTICLE 2. "To see what measures the town will take to encourage enlistments under the recent call of the President for 300,000 troops."

Under this article the following vote was passed :

*Voted*, "That the sum of five hundred dollars ($500.00) be paid to

each volunteer under the call of the President for 300,000 volunteers, up to the number required to fill the quota of this town, who may be legally counted as a part of said quota, excepting such as may receive bounties from other towns."

The quotas under the said call were not assigned until after the 25th of August, 1862, and the plaintiff was not counted on that quota until after said 25th day of August, 1862.

Prior to the 8th of August, 1862, there had been an informal meeting of the voters of the town, when substantially the same vote was passed. August 7th, 1862, after his enlistment, the plaintiff went to Stratham to visit his father, and while there, on or about the 15th of August, 1862, had conversation with John O. Wiggin, one of the selectmen of the town, in reference to his enlistment. In that conversation he informed Wiggin that he had enlisted in Manchester, and supposed he should be counted there. Said Wiggin informed him that his residence being in Stratham, they should claim him as a part of their quota; that they had had an informal meeting of the town, and it was agreed to pay five hundred dollars to each volunteer for three years; that they were going to have a legal meeting, and would no doubt vote that sum to each volunteer on the quota of that town, and advised him to get discharged from his enlistment at Manchester, and come to Stratham to enlist. The plaintiff replied that he wanted to go with the company forming at Manchester. Said Wiggin then advised him to come to Manchester and get it so arranged that he could be counted on the quota of Stratham, and then he would receive the same bounty as should be voted by the town to others. The next day, plaintiff returned to Manchester, and on the 18th of August, 1862, got his name transferred from the quota of Manchester to the quota of Stratham, and was after that duly and legally counted on the quota of that town. The latter part of August, or the first of September, 1862, the plaintiff called upon the town to pay the bounty of five hundred dollars; but it was not paid to him. The plaintiff has never received any bounty from any other town. He served in the army under said enlistment until he was honorably discharged and mustered out of the service with his regiment, June 26, 1865.

For the purposes of this case, the foregoing facts are agreed upon, reserving to either party the right to object to the competency of any part of the foregoing statement. Judgment is to be rendered for the plaintiff or defendant, as the court may be of opinion on the foregoing facts.

*Morrison, Stanley & Clark,* for plaintiff.

*Eastman & Cross,* for defendant.

BARTLETT, J. The object of the act of July 9, 1862, was to enable towns to encourage voluntary enlistments, and not to confer upon them the power of rewarding those who had enlisted. Laws 1862, ch. 2580, sec. 3; *Crowell* v. *Hopkinton,* 45 N. H. 9; *Fowler* v. *Dan-*

*vers*, 8 Allen 80.    Aside from the statute the town had no power to raise or appropriate money for such purposes.    *Gove* v. *Epping*, 41 N. H. 545 ;  *Stetson* v. *Kempton*, 13 Mass. 280.

As the plaintiff had already enlisted and been mustered into the service of the United States when the vote of the town was passed, and there is no evidence that the enlistment of the plaintiff was procured or encouraged by any promise made by Wiggin or any expectation on the part of the plaintiff of bounty from Stratham, for his conversation with Wiggin was subsequent to his enlistment, the town or its officers could not legally appropriate money under that vote to the payment of a bounty to him, and as the town had no such authority under the law, the action of Wiggin, one of the selectmen, could not bind it to the payment of the $500 to the plaintiff who had already enlisted.   The action of the voters of the town, at the "informal meeting," could not, of itself, impose any legal obligation upon the town.   In this view of the case, the fact that the quotas were not assigned, and that the plaintiff was not counted upon the quota of the town until after the vote was passed, becomes immaterial, for the statute does not authorize the payment of a bounty to one already enlisted, merely to procure his transfer from the quota of one town to the quota of another.

There must be

*Judgment for the defendant.*